

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 19 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

John Ethen Jacobs
1504 Colt Ridge Ln
Mableton, Ga., 30126
(678)-949-8519
(404)-615-3866

## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

John E Jacobs,               )   Case No. **1 : 18 - CV - 1686**
      Plaintiff,        )
                         )   **COMPLAINT FOR**
                         )   **VIOLATIONS OF CIVIL RIGHTS**
                         )
      vs.              )
                         )   **VIOLATIONS OF THE**
State of Georgia, Cobb County, Cobb   )   **FIFTH, SIXTH,EIGHTH AND**
County Board of Commissioners,   )   **FOURTEENTH AMENDMENTS**
Cobb County Sheriff Neil Warren,   )   **TO THE UNITED STATES**
Major Michael Skelton, Sergeant   )   **CONSTITUTION, Equal Protection**
Simms, Deputy Miller, Deputy Calfee-   )   **under the Law, False Arrest under**
Vittetoe, Deputy who interviewed me   )   **state law, Assault and battery,**
before going to solitary.  All   )   **Abuse of Process, Gross Spiteful**
defendants in Official and individual   )   **Prosecution**
capacities.  There are other defendants   )
but I did not have enough paper and   )
ink for the 200 additional pages for the   )
solicitors.   )
      Defendant(s)   )
                         )

## COMPLAINT

1. This civil rights action seeks compensatory and punitive relief for damages arising from the violation of civil rights, the wrongful arrest and malicious prosecution and assault and battery of the plaintiff. The defendants demonstrated official policies, patterns, practices, and customs that manifested not only because of intentional discrimination, but also because of systemic failure to recognize or even care about basic principles of due process, and reckless disregard for human life and liberty.

## JURISDICTION

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. 1343 (Civil Rights and Elective Franchise) because Plaintiffs claims arise pursuant to 42 U.S.C. § 1983, et seq. (conspiracy for deprivation of constitutional civil rights).

3. Plaintiff provided sufficient ante litem notice pursuant to O.C.G.A. §§ 36-11-1, O.C.G.A. 36-33-5 et seq.

4.     Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction over Plaintiff's claims arising under state law because the claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case and controversy.

5.     Defendants reside within the Northern District of Georgia. All actions alleged herein occurred within the Northern District of Georgia. Venue it this district is proper for Defendants under 28 U.S.C. § 1391(b) & (c).

## ALLEGATIONS

6.     I spent a total of ten months in Cobb jail. After my arrest in Smyrna I spent nine continuous months in jail housed in a cell with approximately 40 other prisoners. There was a gang fight in another area so about 30 gang members were moved into my cell for a total of 70 inmates.

7.     Most prisoners were black, about five were white but Hispanic prisoners were labeled white, according to the jail wrist bands they wore.

8.     I had not been convicted of a crime, but I spent more time in jail than real criminals. And it was not just my time in jail but the cruelty I was subjected to by the guards, particularly Deputy Miller. My younger sister died 10 days before I was arrested, which added another burden.

9.     I was sick when I was jailed and I got sicker. I had to pay for medical treatment, if it could be called that, I had to pay for OTC medication and I usually had to wait a month to be seen. I was charged $5 for each medical visit and the medications for a total of $20. I did not see a doctor.

10.    The food was terrible. It was unhealthy, unappetizing and insufficient quantity. The food was so bad and the portions so tiny I lost weight while in jail, and I was not fat when I went in. Breakfast was usually a small bowl of expired cereal, sometimes the milk was bad, and a small packet of instant coffee and sugar. Lunch was bologna on 2 pieces of white bread with a small packet of tasteless oil. Supper was usually spaghetti that had no flavor. A small packet of Kool-Off, which may have been privately contracted with the sheriff, came with meals. Coffee, tea or other drinks had to be bought at the commissary. Water was from a fountain attached to a metal toilet.

Sunday we had pancakes (plastic cakes). Twice a week we had grits and powder eggs. A few times a month we were given some slices of fruit. I traded some of my food for the healthier option of fruit.

11.     My father and brother-in-law gave me $60; which I had to stretch over the nine months, for the commissary after the Smyrna arrest. It was infuriating when guards took away food, pens, paper or other supplies I bought at the commissary with the little money I had.

12.     The guards were too lazy and uncaring to distribute toilet tissue, soap, deodorant or toothpaste from the storeroom. Instead, we were expected to buy these items from the commissary. Dental floss was not allowed. I used threads from a towel for floss. If I had been discovered I would have been charged with criminal/malicious damage and forced to pay $35 for a towel, so I was discrete.

13.     We were issued used prison clothes. This included used underwear and socks. We were issued one pair of used shower sandals for shoes which were terribly uncomfortable to wear on the concrete floors. I was in jail so long

the shoes began to wear away, the guard would not give me a new pair instead they would always make excuses. It got to the point where I had to use the plastic bag our sack lunches came in to make a lace to tie the shower shoes together.

14. When I finally got the opportunity to get new sandals I thought the green color on them was paint. It turned out to be fungus or mold. After two weeks my feet became infected and I needed medical treatment.

15. It took another two weeks to get medical help. I wrote a humorous letter to get the nurse's attention. She brought medication with her; otherwise it would have taken another two weeks to see a doctor, if the nurse approved it.

16. The judge saw how we were dressed, including the shower sandals. No one cared.

17. We had to request haircuts, but nothing came of it, just like all my other requests. I've always kept my hair short, but after five months in jail my hair and beard had grown long.

18.   We were supposed to get an hour a day outside in the yard for air and sunlight but we never got close to that.

19.   Not getting fresh air or seeing daylight was bad enough, but something that may permanently affect my health was the three times a month radiation dose we received from the Rapiscan body scanners when we came back from waiting for court. The Forbes article "TSA Abandons Rapiscan's Nude Body Scanners" says that the Transportation Security Agency has stopped using these machines and each machine costs $180,000. The article says these machines are used in maximum-security prisons. I was in a county jail.

20.   Shake downs by guards happened once or twice a week. In a shake down, 20 to 25 guards suddenly rushed into the cell screaming and yelling, often while we were asleep. We were body searched then herded into the recreation area. During those searches our sleeping mats, sheets, clothing and few personal items were gone through and thrown on the floor. Items guards claimed were contraband were seized, including items bought at the jail commissary. The guards tore up everything and left.

21.   The "recreation area" where we were held during shake downs was like a concrete swimming pool with no water. From there we could see and hear the guards shouting as they tore up our stuff.

22.   This was not for the safety of guards and prisoners but sheer harassment. I overheard one guard say, "We ought to go shake down O-POD. That'll really piss them off."

23.   I filed grievances while I was in jail and kept a daily record. This infuriated some of the guards, especially Deputy Miller. He was the worst of the guards, he claimed that it was policy that "…nothing come back from detail".

24.   I wanted to file a grievance against him but they would not give me the form. It got to where I was about to file a grievance about not being able to file a grievance.

25.    Deputy Miller took my notes, pens, paper and food I bought at the commissary. He said he did not "recognize" any of the items as being from there.

26.    I started carrying my notes so they would not be read and taken by the guards, but when Deputy Miller searched me and found my notes there was a problem. Deputy Miller was angry that I kept a journal. He told me I could not carry any items even though other inmates carried things.

27.    Deputy Miller and Deputy Calfee-Vittetoe threw away my addresses and phone numbers so I did not have contact information. They threw away contact info for the investigating detective and my public defender, as well as my motions. I especially needed my pastor's address and phone number because he tried to help me. When he spoke with my public defender Hildebrand, H. said "...he will not plead guilty". My pastor told him that was because I was innocent. My pastor wanted me to mail him my charges, bonds, fines and other general info about my case.

28.    I needed stamps and envelopes to maintain contact with the outside world. Because I could not afford to buy them at the commissary I asked my

sister to send these items. When she did, the jail notified me these items were contraband and from then on blocked all my mail.

29.    Sometime before Miller incident sergeant Simms came to the medical pod and watched me for 10 min.

30.    The day before Miller claimed I assaulted him he came to the medical pod where I worked as a "feeder" for ill inmates and did other duties. He watched me for about 10 minutes. He was supposed to be supervising workers in the main housing. There was no reason for him to be in medical pod.

31.    The next day after work detail Deputy Miller ordered me to put my hands on the wall while he searched me. He was ready to start something. Suddenly he said I "assaulted" him. He snickered. He handcuffed me and injured my hands with what felt like a piece of metal, all the time saying I was "weird" and needed "mental help".

32.   He then forced me to sit on a bench, chained me to the bench where he

slammed my right foot into the floor and cuffed my ankles as tightly as the

cuffs would go leaving little circulation.

33.   Deputy Calfee-Vittitoe claimed that "…when making little notes on

sheets of paper it becomes trash".

34.   They also diverted their attention to my bible and shook all the notes of

the scriptures out.

35.   We were in an area with security cameras but a video of the alleged

assault was never produced.

36.   Deputy Miller called Sergeant Sims and said one of their codes.

When the Sergeant arrived they went into an office and closed the door.

About ten minutes later they came out. I told the sergeant that Deputy Miller

attacked me. She was not interested in my explanation, rather than hearing

my side of the incident she was very combative as if I somehow deserved all

of this over pens and paper. (Even though other inmates carried books,

notes, and sometimes even a bible). I told them that when I got out I would

file a real grievance.

37.   I was taken to medical. Deputy Miller did not request or receive medical treatment for the alleged assault.

38.   The week of September 11th 2015 I wrote the medical department requesting a doctor's report for the incident regarding Deputy Miller but got no answer.

39.   I never went to court for this assault. It was handled in house. I was put in solitary confinement for fighting and resisting a jailer. Sergeant Sims had me sign a paper after my time in solitary.

40.   I was told by a guard (I cannot remember his name he was the one who bragged about having all the guns and chains just before I went to solitary)that the usual time in solitary for assaulting a guard was 60 days but because I had been such a good prisoner I would get only 7 days.

   a.   The penalty for assaulting a correctional officer is not up to 60 days of solitary confinement as determined by jail staff.

b. Georgia Code16-10-24 - Obstructing or hindering law enforcement officers: Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer, prison guard, correctional officer, community supervision officer, county or Department of Juvenile Justice juvenile probation officer, probation officer serving pursuant to Article 6 of Chapter 8 of Title 42, or conservation ranger in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

41.    I have a copy of the jail charges against me for "fighting and resisting staff" and "refusal to obey" and that the penalty for each is 30 days in solitary. I also kept copies of all the grievances I filed.

42.    Three times a month we were taken to a holding cell for possible court hearings. I had not spoken with a public defender or had a bond reduction hearing. We were roused at 4:00 am and taken to a small holding cell in the jail where we sat until 7:00 am. For breakfast we got grits and powder eggs. This was the only time in jail we were given orange juice. We were then

bused to court where we sat in a smaller cell than the one we just left. At

7:30 am we were given a sack lunch of bologna sandwiches. This was the

only food we had all day. The only water we had to drink was from a

fountain attached to the toilet. We usually sat in this cell until 5:00 pm. I

went all those times for a court hearing that never happened.

43.    I tried to get information from the court for filing lawsuits, grievances

and requests but was told in a letter from court there was no information for

that. I wanted to start my civil action since state court was not interested in

justice or truth.  (see exhibit 6 state inquiry )


44.    Additionally, Because of Hildebrand's failure to provide competent

counsel I attempted to move my case forward by filing motions. (see Cobb

Police complaint)


45.    The jail denied and limited resources because I was not a pro se inmate.

(see exhibit 5 –grievance library)


46.    No remedies for any of my grievances.  Limits of Law Library,

Antagonizing guard Deputy Miller, case not heard by veteran's

c. Health hazards-Rapiscanner

d. Lab for social experimentation through a controlled environment.

e. Public safety undermined by the pursuit of convictions.  One inmate bragged about the fact that he knew ICE would not pick him up.

f. Attacked by Deputy Miller; ASSAULT AND BATTERY.

g. Calfee-vittetoe negligence in aiding Miller by shaking notes out of bible to harass and intimidate instead of finding out what happened.

h. S.Simms negligent by angrily scolding me for carrying pens not an inkling of concern as to what facts of the incident were.

i. Deputy who interview plaintiff before going to solitary bragged about having all the guns and chains instead of facts of the incident.

j. Ignored when requested a medical report of the incident.

k. Attack occurred in sally port but no video was produced. Violation of the 8th Amendment cruel and unusual punishment and excessive force.

l. Kangaroo hearing; predetermined guilt.

m. 7 days in solitary confinement

n. Mail keeps being returned.

o. Because of Hildebrand's failure to provide competent counsel I attempted to move my case forward by filing motions. The jail denied and limited resources because I was not a pro se inmate.

50. Grievances all administratively exhausted and jail staff considered the matters 'closed'.

   a. Law Library

   b. Antagonizing guard

   c. Case not heard by veterans accountability court

51. Not filing appeal after conviction

52. After acquittal/release I sat in jail for another 5 hours.

53. Ongoing damages – O.C.G.A. § 51-12-6???

54. § 1-12-5. Additional damages for aggravating circumstances

55. Wrongful Conviction

56. Justice system cannot be trusted

57. Stat led pursuit of convictions trivializes law and justice which can affect public safety.

58. Damage to reputation in community

59. Defamation; Neither police, public defenders nor prosecution were interested in facts.

60. Still struggling to find permanent employment.

61.   Psychological trauma.

62.   Severely lacking in technical prowess which causes the need for re-

training leading to depression.

## CLAIM FOR RELIEF

63.   Plaintiff realleges and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 61of this complaint. Cobb

Defendants named herein unlawfully deprived John Jacobs of his

constitutional rights and caused additional prosecution to be instituted by

   a.   Working without pay.
   b.   Exposing him to the known to be dangerous Rapescanner.
   c.   Notices mail keeps being sent back after writing the judge.
   d.   Cruel antagonizing guards
   e.   Watched the plaintiff the day before the attack.
   f.   Falsely accused him of attacking a guard.
   g.   Plaintiff was mocked, humiliated and threatened by guards after the
         incident.
   h.   Kangaroo hearing were I was not able to defend myself nor was a
         lawyer present.
   i.   Grievances.

64.   Pursuant to O.C.G.A. § 51-7-4 Lack of probable cause, question for jury,

O.C.G.A. § 51-7-1. Right of action for false arrest, O.C.G.A. § 51-7-40

Right of action for malicious prosecution plaintiff has right of action.

65.    Pursuant to O.C.G.A. § 51-7-47 Measure of damages by the

circumstances of each case, plaintiff is entitled to all applicable damages

under;

   a.  O.C.G.A.§ 51-12-5.1Punitive damages
   b.  O.C.G.A§ 51-12-3 - Direct and consequential damages
   c.  O.C.G.A§ 51-12-4 - Damages given as compensation for injury
   d.  O.C.G.A. § 51-12-5. Additional damages for aggravating
       circumstances
   e.  O.C.G.A. §16-5-42False imprisonment under color of legal process
   f.  42 U.S.C. § 1983 Pp 34-38
   g.  42 U.S.C. § 1985 (2)(3)
   h.  The <u>Fourth Amendment</u> (1791) protects people against unreasonable
       searches and seizures of either self or property by government
       officials
   i.  The <u>Fifth Amendment</u> (1791)due process of law
   j.  The <u>Sixth Amendment</u> (1791) provides several protections and rights
       to an individual accused of a crime. The accused has the right to a fair
       and speedy trial.
   k.  The <u>Eighth Amendment</u> (1791) cruel and unusual punishment.
   l.  The <u>Thirteenth Amendment</u> (1865) involuntary servitude, as
       punishment for a crime.
   m.  The <u>Fourteenth Amendment</u> (1868) a state shall not violate a citizen's
       privileges or immunities; shall not deprive any person of life, liberty,
       or property without due process of law; and must guarantee all
       persons equal protection.
   n.

66.    Plaintiff filed a claim using S.F.95 and sent ante litem letter pursuant to

O.C.G.A §§ 36-11-1, O.C.G.A. 36-33-5, O.C.G.A. 50-21-26 (2010) et. seq.

and received no response.

## ITEMS BEING CLAIMED FOR RELIEF

67. **Malicious Prosecution**

68. **Government employees on all levels either lying or threatening to lie in order to harass and intimidate**

69. **Foot infected with fungus**

70. **Defamation**

71. **Intimidation and Harassment**

72. **Number of Court Appearances**

73. **Drug test**

74. **Assault and battery**

75. **Injury to hands**

76. **Mocked by guards after attack, called "weird" and "...in need of a psychological exam".**

77. **Intentional Infliction of Emotional Distress**

78. **Abuse of process**

79. **Damage to reputation**

80. **Due process of Law**

81. **Gross Negligence**

82. **Exposure to hazardous Rapiscanner**

83. **$121000/DAMAGES**

84.    As a direct and proximate result, Plaintiff suffered damages including, without limitation, shame, humiliation, anxiety, personal injuries, loss of time from work, diminished earning capacity in his profession, embarrassment, costs of legal defense and investigation expenses, and mental wellbeing in the investigation and pursuit of this action.

85.    It was further part of the conspiracy that some of the public defenders, and prosecutors aided and abetted by each other within the State, to maliciously prosecute Plaintiff in violation of his rights.

86.    Defendants receive federal funds and waive immunities.

Dated this [23~~RD~~ ~~day of March~~, 2018]
19   APRIL  2018

John Ethen Jacobs, Pro Se
1504 Colt Ridge Ln
Mableton, Ga 30126
(678)-949-8519
(404)-615-3866

CLERK OF THE STATE COURT,

I AM JOHN JACOBS, AN INMATE AT THE COBB COUNTY JAIL. I

AM WRITING TO INQUIRE ABOUT INFORMATION to KNOW BEFORE FILING A

LAWSUIT, FORMS AND FEES AND OTHER INFORMATION to FILE A LAWSUIT. (ETC.)

I AM ALSO ASKING FOR THE FILING OF SOME MOTIONS AS WELL AS THE

FORMS FOR WORDING AND STRUCTURE OF PROPERLY FILED MOTIONS.

§ 15:5 RELEASE
§ 8:4 MOTION FOR BOND FORM 1 & 2
§ W. DEMAND FOR SPEEDY TRIAL FORM 1 & 2
§ 14:162 OUT OF TIME DEMAND FOR TRIAL
§ 14:163 ACQUITTAL FOR FAILURE to TRY
§ 14:164 DISMISSAL FOR FAILURE to HAVE SPEEDY TRIAL
§ 14:234 RETURN OF SEIZED PROPERTY

7/29/2015



## STATE COURT CLERK'S OFFICE

Angie T. Davis
*Clerk*

12 East Park Square
Marietta, Georgia 30090

Robin C. Bishop
*Chief Deputy Clerk*

DATE: ___**August 3, 2015**_____

RE:___**JACOBS, JOHN**_____

The enclosed correspondence is being returned to you for the following reason(s):

_____ Our office has no record of a case for the information you provided.

_ ___ The State Court of Cobb County is the court in which Traffic and Misdemeanor cases are filed. The case you requested has been destroyed pursuant to the Records Retention Schedule for Courts. Traffic Violation Bureau citations prior to 2007 have also been destroyed. There is no docket available for TVB citations pursuant to (O.C.G.A. 40-13-61).

_____ Our office is in need of additional information in order to locate a case file. Please provide us with any, or all of the following: charges, disposition date, offense date, case number, citation or warrant number

__ __ You have requested a disposition; however this case is still active:

      _____ Case number_____has a court date of __.

      _____ Case number _____ is in a Bench Warrant/License Suspension status.

__ _ The pleadings you have attempted to file do not reflect any case in our Court's Case Management System. Please verify a case number has been assigned and place the case number on the pleadings before returning them to our office.

__**X**___ Other: __**WE ARE NOT ABLE TO PROVIDE YOU WITH THIS INFORMATION.**___

*This office does not perform record searches however we are open for public viewing and copying of records Monday through Friday between the hours of 8 a.m. and 5 p.m.

Sincerely,

Melissa Brady
Deputy Clerk,
State Court Clerk's Office

**41059**

## COBB COUNTY DETENTION FACILITY
### INMATE GRIEVANCE FORM
### CASE # 32668

INMATE NAME Jacobs, John          SOID 864319
CELL LOCATION L1
DATE ISSUED 08/09/15
ISSUED BY D/S Stone

DATE OF INCIDENT 8/8/2015
BRIEFLY STATE YOUR GRIEVANCE Deputy Miller and his disrespect. Deputy Miller has been antagonizing me and throwing away items I purchased from commissary. He has also allowed his partner to throw away my daily logs which I use to recall my thoughts and events of the day. Page 6 of rule book says staff are responsible for lost, damage, theft; but that is what was constantly happening because of staff. On that day I lost 2 sets of earbuds, and 3 pens this after he stole and discarded a commissary pen I week priors and 2 more pens with my shell. After all of this he then started to call me "weird" and said I need a psychological exam. I turned to ask him why is he constantly throwing away my stuff he threw cuffs on me which bruised my hands and wrist then claimed I was assaulting him? Out of space, but I will file a real grievance

Inmate: Signature/Date John E. Jacobs JR          8/8/15
Received by: Signature/Date ___ Not ___ 60120v18     8/9/2015

Respondent : ( ) Check One   Forwarded by : aJMM      Respond by 08/8/15

( )Team 1 ( )Team 2 (X)Team 3 ( )Team 4 ( )Medical ( )Prison ( )Work Release

( ) Food Service ( ) Maintenance ( ) Inmate Services ( ) Accounting/Commissary

Response Inmate Jacobs I was in m-pod on the date that this incident took place. I suggested to you to leave all your pens, paper and personal items that you were taking on detail in the dorm. The pens that Deputy Miller took from you had been altered and is considered contraband. You were handcuffed because you became combative with Deputy Miller when he started to find objects on you that you were not suppose to have.
Staff Signature/Date S.Sgt. Burns          0-9-81

Received by Inmate/Signature-Date ___
Returned by Staff/Signature-Date ___ Sims   8/17/15

**Note:** You must submit your grievance on the same day you receive it. You have 5 days to appeal the findings from the date of response. (You must request an appeal form)

WHITE COPY: ORIGINAL/FILE      YELLOW COPY: INMATE RESPONSE      PINK COPY: INMATE REQUEST

No. **41344**

## COBB COUNTY DETENTION FACILITY
### INMATE GRIEVANCE FORM
CASE # 32802

INMATE NAME Jacobs, John          SOID 000864319
CELL LOCATION L5
DATE ISSUED 8-20-15
ISSUED BY Deputy B. Sawyer

DATE OF INCIDENT 8-20-15
BRIEFLY STATE YOUR GRIEVANCE I AM A US NAVY VETERAN AND WOULD
LIKE CASE TO BE HEARD OR REVIEWED BY VETERANS ACCOUNTABILITY AND TREATMENT
COURT. I HAVE NOT BEEN TREATED FAIRLY; 6 MONTHS FOR A FALSE FAILURE TO
APPEAR ON A MISDEMEANOR OBSTRUCTION BECAUSE I DEMANDED A TRIAL.

Inmate: Signature/Date John E. Jacobs, II          8/20/15
Received by: Signature/Date Dep. Sawyer #1354     8/20/15

Respondent : ( ) Check One  Forwarded by : 082114     Respond by 082814

( )Team 1 ( )Team 2 ( )Team 3 ( )Team 4 ( )Medical ( )Prison ( )Work Release

( ) Food Service ( ) Maintenance ( ) Inmate Services ( ) Accounting/Commissary

Response YOUR NAME HAS BEEN SENT TO THE COORDINATOR FOR
THE VETERAN'S COURT. YOU SHOULD HEAR FROM A REPRESENTATIVE IN THE
NEAR FUTURE.

Staff Signature/Date G. Thursby 08210

Received by Inmate/Signature-Date JG JCH 8/26/2015
Returned by Staff/Signature-Date 8/26/15

**Note:** You must submit your grievance on the same day you receive it. You have 5 days
to appeal the findings from the date of response. (You must request an appeal form)

WHITE COPY: ORIGINAL/FILE     YELLOW COPY: INMATE RESPONSE     PINK COPY: INMATE REQUEST

## COBB COUNTY DETENTION FACILITY
### GRIEVANCE APPEAL FORM
### CASE # _32972_

INMATE NAME _Jacobs, John_     SOID _R64317_
CELL LOCATION _____
DATE ISSUED _9/1/15_
ISSUED BY _O/S Calice Vareuc_

**BRIEFLY STATE YOUR**
APPEAL _(#32972)_ _I AM WRITING to APPEAL the 50 PAGE/Mo. Limit. I UNDERSTAND WHY ITS THERE, BUT IN A EMERGENCY SITUATION SUCH AS INEFFECTIVE COUNSEL, 50 PAGES PER WEEK OR WHATEVER IS NEEDED WON'T HURT. THE U.S. CONSTITUTION AND THE GEORGIA CONSTITUTIONS HOLDS THAT I HAVE THE RIGHT to REPRESENT MYSELF OR DEFEND MYSELF. YOU PEOPLE RUN THE JAIL. ALL YOU HAVE TO DO LOOK ME UP AND SEE WHY I AM HERE, AND THAT I HAVE HARDLY GONE TO COURT. I AM HERE ON A FALSE FAILURE TO APPEAR ON A MISDEMEANOR OBSTRUCTION. THE COURT HAS MESSED AROUND FOR 2 MONTHS AND ARE GETTING DESPERATE BECAUSE THE STATUE OF LIMITATIONS IS IN 2 MONTHS. I HAVE BEEN HERE SINCE 2/17 THEY USING JAIL to FORCE A PLEA. NEVER!_

Inmate: Signature/Date _John G Jacobs  9/6/2015  d2u wth 30_
Received by: Signature/Date _MORNING #355 AM  9/6/15_

Date/Forwarded to : _MRS. WILLIAMS 090915_

( ) Team 1  ( ) Team 2  ( ) Team 3  ( ) Team 4  ( ) Medical  ( ) Prison  ( ) Work Release

( ) Food Service  ( ) Maintenance  ( ) Inmate Services _(LAW LIBRARY)_  ( ) Accounting/Commissary

Response: _Mr. Jacobs, the 50 page limit for Non Pro se' inmates still stands, but you opposition to this rule has been noted._

Signature/Date _M G Will #131  90915_
Received by Inmate/Signature-Date _John G Jacobs  9/9/2015_
Returned by Staff/Signature- Date _#354  9/9/15_

**Note:** This response shall serve as the final decision in this matter.

WHITE COPY/ORIGINAL TO FILE   YELLOW COPY: INMATE COPY   PINK COPY: INMATE REQUEST